Next case on our docket is 21-40365. May it please the Court, I'll be addressing the issues concerning the validity of the conveyances to Appellant Nicholas Fugedi. My co-counsel will be addressing the remaining issues in this appeal. We have three points concerning the validity of the conveyances, any one of which on its own would be a basis for this Court to reverse the trial court and render judgment that Nicholas Fugedi obtained title to this property. The first point is that the 2019 general warranty deed is valid. The second point is that if there were any defect in the original deed, that defect has been cured by operation of the correction affidavits and the correction deed. And third, even if the correction deed were not effective to retroactively correct the original conveyance, it is an effective conveyance in and of itself to transfer title to Mr. Fugedi. To the first point, the 2019 deed was valid. We've provided your honors copies of our oral argument exhibits, and at tab one you'll see the appellee's abstract of title. Document 85 in that exhibit, which can be found at tab five, is the 2019 general warranty deed. The grantee in that deed is the CARB Pura Vida Trust, and the trial court held that deed was invalid because a trust could not hold property. But that... Um, can you tell me what the CARB Pura Vida Trust is? What is the business, and what is the business with Interim? Nothing was explained in the pleadings as who are these parties. It's a trust that's formed under the Michigan Trust Code. It's an irrevocable trust. Mr. Fugedi is the trustee of that trust, and the trustee was attempting to purchase this property, which is located in Houston. And what's the... what's the company? The trust is the entity. What's the CARB Pura Vida? What is that company? Why is that its name? I'm not sure why the name... our client is Mr. Fugedi, and that is the only information we have. I just know that this was a trust that has been formed in Michigan for the purpose of purchasing this property. What business is your client in? In obtaining real estate here in Houston, or in Houston, Texas. It's still very vague. It is, and I apologize, Your Honor. I know there are additional details in the state court proceedings that we could direct your court to. I believe we raised those in our reply brief. It's the 190th court in Texas, and there's some additional facts laid out there if the court is interested. What was in the corpus of the trust? Just this property? Was there anything else that the trust, in its existence, owned? Any money or anything? Not to my knowledge. Fugedi, as a trustee, did pay money, just under, I believe, $300,000 in cash, in addition to a $3 million promissory note. He was the trustee from the creation of the trust? That's correct. And simply because that trust was named, the grantee does not invalidate that original conveyance. Alfred B. Crum, from the Texas Supreme Court, just to mention one case, holds that a valid conveyance occurs as long as you can identify who the intended grantee is. Here the intended grantee was Mr. Fugedi. It was simply a Scribner's error, a mistake, that the trust was listed as the grantee. And under Texas law, there are numerous cases, which we've cited, pages 13 to 15 in our opening brief. And those cases have held that trust can hold property, because in those cases, no one challenged whether or not the trust could hold the property. So there is precedent. That's the trustee, right? That's the error that you're trying to correct. That's correct. And who did the closing? Was it a law firm or some title company? It was a title company. And I'm glad you raised that issue, because it brings me to my second point, which is, if there were a defect in the original deed, it's been corrected by way of the correction affidavit. And the closer, Ms. Meryl Burbisky, was one of the affiants who testified, or swore in her affidavit, which you can find those at tab three in your binder, that this was merely a Scribner's error, that Trustee Fugedi was present at the transaction, he was the intended grantee, and it was simply a mistake to list the trust as the grantee rather than the trustee. And under the Texas Deed Correction Statutes, there are two ways in which you can correct such an error. If it's a non-material error, Section 5.028 allows a correction affidavit, which I just mentioned. Not only did the closer execute one of those, but Mr. Fugedi did as well. And so those affidavits operate to correct the original deed. Now the trial court held that it was a material change, but we have also, our client has also executed a correction deed. So even under the material change law at Section 5.029, that requirement has been satisfied. And the case of Broadway National Bank, which was issued after the trial court decision, embraces broad changing of deeds, even when they are material. And I see my time is up, and I'll direct the Court to our filings for the argument regarding why the correction deed is also a conveyance in and of its own right. Thank you, Your Honor. Thank you, Your Honor. If I could go back to one thing. There was a question about what was in the corpus, and at the closing, the trust documents were provided, and at least the trust document, I don't have personal knowledge, but I did see the closing documents, and the trust document indicates there was a silver bar and $275,000 cash which was used as the down payment on the property. That was the corpus at the time. What's the corpus today? I don't know. But at the time, that's what it was. And what I'm going to address is really what you've read, and you're probably going to hear the rest of the morning regarding a foreclosure and this other lien and title problems. And I want to walk you through really the lien that's at the center of this, of the controversy, I guess. And I want the court to focus, or ask the court to focus kind of on a principle of law in Texas law. Release of lien valid on its face until set aside is a complete bar to any action by the former lien holder based on matters covered and discharged by the release, and that's the in-bank El Paso case, 792 Southwest 2nd 472, because that's really where we're going. And we did provide the court with some exhibits. I don't know if the court will use them, but I'm going to walk you through, because sometimes it's a little easier if you're looking at something to walk through in a tab one. And also, I'll indicate that on the index page, we've provided the record sites for everything that we've provided. We haven't provided you anything that's not in the record, that wasn't with the court below. But in tab one, you'll see is the abstract. And this is a, we believe it's an important abstract on the property. It's the abstract that was provided by the appellee to the trial court. And you'll see that it precedes with an affidavit with Mr. Sternemann's swears to it. I believe Mr. Sternemann is an associate with Mr. Ramey's law office. I'm not sure. It's an expert report. But in it, you'll see that they adopt the abstract that we provided for documents one through 85. You'll see on the second page of the affidavit. I've relied on the information provided in the plaintiff's abstract for numbers one through 85. And so, there's no dispute as to documents one through 85. It's the same. Both of our abstracts are the same. So if you'll flip through next to the first page of the actual abstract, you'll see at the bottom of the page a document 79. That's the lien. That's a deed of trust lien against this property. The property is at 829 Yale is the address of the property. And this lien you'll see was created in April of 2017 in favor of Steadfast, which is the appellee. Now, turn the page. You'll see that the next effect, the next document in this abstract is 81 in January of 2018. And this is an assignment. And I might also say tab eight, if you'll flip over to tab eight, is just a different way to look at the timeline of this transaction. This was also the record citation at the bottom for some reason didn't print, but this was an exhibit, a summary exhibit at trial, a summary judgment. So it's also in the record and the trial court had this. But it's a different way to look at this transaction. And you'll see across the top is the April 4th transaction, which the lien was created. And then you'll see the next three, three boxes, part one, part two, and part three are this transaction referred to in 81, this assignment. And that's an assignment of the lien. And if you'll also turn this, we have this document and it was in evidence to tab number 10. It's an assignment of note and liens. And what it was is the Apple lease sold this note to a company called DNA Alvarez Group. And this note was secured by this first lien on 829 Yale. So they sold and transferred this note away. They no longer owned it as of January 30th, 2018. And tab 10. What did they sell it for? Wasn't it something nominal? I'm sorry? What did they sell it for? Wasn't it something nominal? No. No, ma'am. Millions of dollars. It was millions of dollars sale. And tab 10, if you'll go flip. This says, um, Yale Development executed and recorded a general warranty deed declaring that for $10 in consideration, it sold and conveyed the property to a grantee known as Carpura Vita Trust. That's different. That's not what you're talking about. That is what I'm talking about. You're looking at tab 10, this assignment, right? I'm looking at a bench memo, but it's quoting, it's quoting the plea. Oh, I'm sorry. And so the note, let me give a bigger picture, I was going to walk through a step at a time. But the note was purchased for, I can't remember, several million dollars, right? The appellant loaned DNA Alvarez the money to buy it. And so there was a new note that DNA Alvarez signed back to, um, Steadfast in order to buy the note. I mean, he borrowed the money. They loaned him the money to buy this note. This is where it gets complicated, right? I say complicated, but so they, so they borrowed the note. So there's a new note. So he bought it for several million dollars. I don't remember. We can look it up. So there's a note that is secured by the pledge of the existing note. That's exactly right. Fair statement? That's a fair statement. And so that secured transaction, and that's where I believe the words get muddy between the parties, right? Because at that point, Steadfast had a lien in a note, right? An instrument. It's an article nine transaction is all they had. DNA Alvarez owned the note that had the lien on 829 Yale, right? Steadfast never foreclosed on that lien. They never took back the note. They say that they had, that they continued to control the lien on the property, which is, it's impossible according to the documents. You'll see the note, it's going to say on the second page of the note of the assignment, DNA Alvarez group purchaser, the receipt and sufficiency of which are hereby acknowledged. Seller has endorsed, sold, transferred, assigned, granted, conveyed, and delivered, and by these persons do endorse, sell, transfer, assign, grant, convey, and deliver into the purchaser all the following. The note, the loan documents, which includes a deed of trust, and so all these documents were transferred for DNA Alvarez. Flip back to the abstract. So as of January 30th, 2018, DNA Alvarez owned the note and the lien against 829 Yale. Go down to number 84. On July 22nd, 2019, DNA Alvarez group released the lien. It's gone. That lien was released, right? He owned it. He released it. 85 document is the transfer to Carpura Vida Trust. That's where the transfer occurred, and we've talked about why we believe the trial court erred in finding that deed void. It doesn't make sense, and it doesn't promote the economy of transferring property, because I believe that the confusion is where the deed talks about the trust, and the court said that's a void deed, doesn't go, and he went further and said, you can't fix it. That's what he told us, because we had corrective deed, we had the affidavits for non-material, and we had a corrective deed under 5029 for material, right? And the trial court said, sorry, none of it's any good, which doesn't make sense, because the parties to the transaction were the trust, right? That made the deed void. But the trustee should still be able to go back and fix it. All that was wrong, we had a transaction with a trust, the trustee signed a contract, paid money to get a deed, but the deed was just filled out wrong. Everyone agrees that it should have said, Pugetti, trustee, CARP, Pura Vida, trust. It didn't say that, but that doesn't make the transaction itself void. You should be able to look at the transaction underneath this deed that evidences the transfer and say, let those people fix it, right? There's real people with real money, the deed is just wrong. The deed is just wrong, that's it. And so let those people, which is what we've done, the trust and the seller, fix it, and we have a deed, because that's the intent of the parties, is to transfer this property for good and valuable consideration. They should be able to do that. And the trial court has just said, you can't, you didn't, and there's no way you can. And we're left with nothing, having paid money and not gotten our property, and no way to get the property. And so we don't, we believe that the statutes are such that that's just not the intent of the legislature, and that's not how it should work as a transaction, as a real property transaction. And I'll save my five minutes for rebuttal. Thank you. May it please the court. I'm Christopher Ramey. I have not had the honor of appearing before you before in the Fifth Circuit, and I bring to you today a case and a dispute which I believe is unprecedented in my career. It is a very serious matter. It is a case in which it's not about void deeds or about Article 9 or any of that. This is a case about outright fraud and attorney misconduct. And we will address a brief outline of where we got to the point where the trial court issued a judgment based on the void deed into a trust. Let me ask you, as a threshold matter, there was a lot in the brief about the fraud. You just mentioned fraud, and even some documentation. It looked like some research of the public records and a series of allegations, as you say, a very serious matter. But I didn't get, where are we with regard to the record? Is that something that is in the existing record that came here, or is that something that you need to bring on a Rule 60 motion or maybe something like that after we finish with the case? No, Your Honor. This court has jurisdiction over this dispute and the fraud as well as the ability to say it. But we can't try the case, the allegations here. We're not a fact-finding body. So it seemed to me that it was a bit of a bridge too far in terms of some of the allegations that are made that haven't even passed yet through the district court. Correct me if I'm wrong. Maybe I'm misreading the record. That is incorrect, Your Honor. What we have here is two whistleblowers in addition to the other evidence in the case, all of which is undisputed. The first whistleblower, and I would like to spend a little bit of time going back over it. This is someone who testified. This is someone who testified and is on the record in the trial court. His declaration in support of summary judgment is in the record, and it outlines all of the fraud. What we have that's new is the uncontested, I mean they essentially pled the fifth, uncontested whistleblower evidence tapes directly of Mr. Kelly and his outline, the entire fraud that he and Choudhury put together to use Mr. Fugetti as a front, a fake trustee for a fake trust, not one of which ever paid a cent for this property or to repay the loans. So let me go back. The declaration of David Alvarez is part of the record. The attorneys, unfortunately, and the parties here concealed all of the truth of this matter and the fact that this entire transaction and entire trust was a complete sham, concealed it from the 190th, concealed it through $2 million worth of discovery, concealed it from this trial court, and it was discovered after the judgment by a whistleblower coming forward and producing these audio tapes, which are in the record in the motion to dismiss for just damages and for sanctions. So very briefly, I want to make sure it's very clear, you were just told an outright lie that said Nicholas Fugetti and this trust paid money for this property. And everyone knows, and the record is undisputed on this point, neither 2017 Yale, our appellant's grantor, nor Nicholas Fugetti, nor the trust ever paid a cent to repay the money they borrowed and stole from steadfast parties. And steadfast parties are good people. This is not a bank. My clients are not wealthy. They loan their money in reliance on the deed of trust and the loan documents we're going to get to here, and they were simply defrauded. Not one of them, no one affiliated with this group of conspirators ever paid a cent for this property. The only money that changed hands in the transaction went to David Alvarez, and it was to repay some of the money they defrauded him out of in order to trick him into executing the 2019 fraudulent release of lien, which he can't do. We'll get to that in a moment. So briefly, original transaction, steadfast loan to developer, $6 million, $8 million. DNA Alvarez loan, the same developer, $2 million. That developer secretly assigned the property to Jettall, an infamous alitudory company. They're famous for fraud cases around Houston, infamous, hundreds of fraud cases. The only way to work that out is try and do a loan workout or go ahead and foreclose. They were threatened with endless litigation if they didn't do a loan workout, and so they let Jettall create 2017 Yale. That's the grantor of the property in the fake transaction underlying the appellant's claim. So they loaned more money to 2017 Yale. 2017 Yale defaulted on the loan, stole the money, and then in the trial on the 190th, which was over the promissory note and the deed of trust and steadfast right to foreclose, well, as soon as they lost the summary judgments in the 190th, they created the fake trust. This is all undisputed testimony in the motion to dismiss. Mr. Lloyd Kelly, an attorney who represented some of these parties, created a fake trust, bribed Mr. Fugetti with $5,000 to go be a fake trustee, funneled $275,000 into Mr. Alvarez, who was his client, who he had previously defrauded out of his $2 million he loaned, to get him to file this fraudulent 2019 release, which is still an ineffective release even if it had not been fraudulent. So at the point we have this fake transaction, you have—there has never been any legitimate business going on here. My clients loaned $6 million to the developer. They did a loan workout to 2017 Yale. They stole the money, lost the case in the trial court in the 190th, and then in order to avoid that judgment, they made up this fake trust and transferred the property to get it out and void—or not void, but render useless the judgment in the 190th. Now, the fraud that you're talking about, was this found by the district court in issuing the ruling that's on appeal now? Or was—my understanding was that the district judge found as a matter of law, Texas law, how the deed could be reformed or not. Correct. Was there any kind of finding of fraud that generated the result that we're here to review today? The court did not address the fraud in his judgment. However, as this court has ruled in the past, the Blue Bond and other cases, if any of the were presented to the trial court and will support the judgment, then they will be—then the judgment should be affirmed. Well, that leads me to my next question, though. In terms of credibility, was there any finding of credibility of any of the witnesses' testimony that you're citing here for the—that a fraud occurred? Your Honor, the credibility goes to the undisputed testimony of these two—of the first whistleblower who we had in front of the trial court, who said this entire transaction was a fraud, the trustee was fake, the—I forget, he didn't pay anything for this property, he didn't pay anything to repay the loans. All of that was uncontested. That was before the court by a summary judgment. The court chose to address another correct issue, which I will get to briefly, but it's really not the crux of the case. The position that the trial court took in finding the deed to be void and using that as one of the nine valid grounds for summary judgment and just choosing that one, it is proper ruling. That's—every state court that I found that had a Supreme Court decision on this issue ruled in favor of the court's reasoning. Corpus Juris Secundum, Lange and Leopold, all of the treatises support the trial judge's reasoning on that. This is not— It seems like you want us to find that a fraud occurred and resulted in a transaction that needed to be undone. Let me bring it full circle, Your Honor, because the fraud results in a lack of jurisdiction and it results in a lack of diversity and it results in a lack of standing. And now, with the evidence from the second whistleblower, we know for a fact, and it's undisputed and it's before this court properly pursuant to the rules, that there is no trustee, there is no trust, there is no standing, because the real party in interest is actually Lloyd Kelly and Ali Choudhury, who—the quotations are there, this court has the audiotapes. If it wants to review that, it's quite interesting. This entire trust was created solely to perpetrate a fraud on the 190th and to perpetrate a fraud on steadfast parties. There is no other basis for it. And when there's no real party in interest that's a trustee, it's a legitimate trustee, then that party is not counted for purposes of diversity. The undisputed testimony before this court and before the trial court was that Lloyd and Ali were the real parties in interest here, both of whom are Texas citizens. Many of the police, the steadfast people, are Texas citizens. There is no diversity. So the only thing left here, and this can, of course, be raised at any time, it's raised for the first time in the motion to dismiss, the jurisdictional aspect of it, because at the trial court we had the first whistleblower, but we did not yet have the second whistleblower come forward. So the second whistleblower was an employee of Mr. Choudhury, who was asked to audiotape these conversations because he was going to blackmail Lloyd Kelly. They were trying to defraud each other, too. That's why we got these audiotapes. So you're asking us to listen to this audiotape that the district judge hasn't heard and determine that that is accurate and credible and that we should act upon that in finding no jurisdiction? Is that your argument? Yes, Your Honor. And if that doesn't, I mean, absolutely, that's proper under the rules. I mean, the rules of appellate procedure do allow for, especially where the evidence was deliberately concealed in bad faith by the party and counsel from the trial court and it was newly discovered afterwards, yes, that new evidence is part of this record under the federal rules, I believe, 2 and 8 and 10. I can't remember exactly which one was on point for this, but it's briefed fully. And this court does retain jurisdiction to do what's right. There's a tremendous opportunity here, which we need to get into more depths of this fraud to make sure it's very clear. There's a tremendous opportunity not only to do justice for the parties, but to do really justice for the bar and for the public at large here. There has never been, in my experience, a more clear-cut case of proven attorney misconduct and outright fraud on the court and the use of these courts literally as a vehicle to perpetrate the fraud. And if failing that, to try to bury it under arguments of Article 9, all this other stuff, it doesn't matter at all. Logically, though, you have prevailed in the district court. Indeed. But if we were to say no jurisdiction, then you'd, I guess, go back to state court. There's no motion to remand pending. The argument is that we don't have jurisdiction. So wouldn't that wipe away the success that you've had up to this point? If the case is dismissed for no jurisdiction and the court doesn't feel that it's proper to try to remedy this wrong, which I believe that is not only for the benefit of the parties, but for the benefit of the bar and to send a message that the courts are not to be used in this manner. And we have a fraudulent title abstract that has been filed against us. You're saying we have no jurisdiction because of lack of diversity. Your Honor, as briefed, Rule 38 and the Doty and several cases briefed allow this court to take into consideration the original evidence of the whistleblower and the new evidence of the whistleblower and to issue just damages. And 28 U.S.C. 1927 allows sanctions and attorney's fees award from this court in an effort to do justice here. And that jurisdiction remains to, you know, this court has inherent power to enter those So that is what we're asking and a sheer dismissal would not do justice and it would send the wrong message not only to these parties, but to every attorney that wants to come in here for a party they know is a complete fraud that never paid anything for any of this, that was bribed to participate on both sides, bribed to perjure themselves on both sides, both Fugetti and 2017 Yale, Brad Parker. Why shouldn't we remand the district court to consider all this new argument? Because this court is the best arbiter. This is a de novo review on a summary judgment. This was all before the trial court and the trial court chose to go a different direction with the void deed, which is also a correct basis. But the only way to do justice here is to resolve this now. And this is the best opportunity I've ever seen in my career to send a message to the bar. We have years, I'm sorry. You said the second audio tape was not before the district court. The second audio tape was not, but it is admissible in this court as new evidence under the Federal Rules of Appellate Procedure and it is a proper basis for this, for the justices of this court if they see fit to do the right thing here for both the parties and send a message here. So that's the most critical thing here is to ensure that the steadfast parties don't endure. I mean, right now we're four years in, five years in and millions of dollars of damages, millions in attorney's fees, all because these parties have literally gotten away with using various courts to perpetrate this fraud or to bury it. What is this property? Why is it so valuable? It was originally a condo development in Houston. It was partly completed when 2017 Abandoned the project and stole the rest of the funds out. They didn't pay their contractors. They just left it as soon as their first no payment was due to steadfast. So if it's finished, it should be worth 15 million bucks. But now it's been sitting for four years because of all this litigation and the clouds on title that they've created through essentially frivolous pleadings, clearly demonstrated, I mean I've never seen a more clear cut case of just frivolous litigation, completely, from start to finish. What's it worth now since it's not finished? It depends on if the structure will have to be torn down or if it can be completed without tearing it down. It's been sitting now for years, open. So it is an eyesore. It's a blight on the Houston skyline. It's got permitting problems and of course, because this litigation continues, there's still a cloud on title and so it can't be sold. Are you sure you want it? Well, what we really want, Your Honor, is justice because it's not worth what it was and it never will be. And the costs to complete it are astronomical, not to mention the attorney's fees that, you know, 2017, it was a sham. It was a sham from the start. It never had any assets. Forget he never had any assets. This trust never existed. It was all a sham. And so what good is a judgment? This is the chance to put a stop to this kind of blatant fraud. So there are, like I say, nine grounds by which the court could have chosen. It chose the most simple and clear cut one. It's just hornbook law. You can't do a deed into a trust. However, you know, go back to the most basic fundamental lending principles, steadfast loan their money because they had a prior recorded deed of trust and a prior recorded collateral transfer of note and lien. What a collateral transfer of note and lien is, is it's a document that puts the world on notice. You have a separate claim for fraud and the district judge grants you relief in this case strictly as a matter of law that the, the, the titles invalid, whatever, what have you, the attempt to reform the title is ill-fated. Couldn't you, wouldn't you still have the fraud claim in district court in order, you keep mentioning the, the expense, which I certainly don't doubt the attorney's fees and costs involved in all of this. That's the hook on the fraud claim, isn't it? That if you can prove fraud, that you also would have an additional ground to recover fees and costs that you might already, you might not have already. Fraud is an affirmative defense in this case, not a claim, right? Fraud, you can't, you can't form a trust to perpetrate a fraud, but frankly, you can't form a trust. I mean, they presented no evidence that a trust even existed because it's a statute of frauds issue. Your claim that your clients were defrauded by one or more defendants or people who are not defendants, don't you still have the opportunity to bring that claim? We could bring that claim and it, and it, it has been, that claim would still exist. Can't you bring it in this case before the district judge and say, well, not only do we want the relief you've already given us, now we can prove fraud and we have an entitlement to attorney's fees and costs as well. It can be brought if it were to be remanded on that ground, although I don't think, this court never had jurisdiction in the first place. That's what the fraud brings. The fraud means that the trustee was fake and he's not a party for diversity and therefore the real party in interest that paid all these lawyers and paid, you know, the $275,000 to repay the fraud to Alvarez. Well, it's hard for us to undertake a finding of fraud only to find in the end that we have no jurisdiction to not only do that, but anything else. So why would we have the authority to do it if we don't have jurisdiction over the case? Because specifically you have jurisdiction and inherent power to discipline both parties and conduct, even in the absence of diversity jurisdiction, even where it's found ultimately that no jurisdiction exists. That is why that relief is the most appropriate, because this is a quiet title case that was client's ability to foreclose and to buy the property and to sell the property, and it accomplished that. Here we are two years later. So, it's tying up our property. The only way justice can be done is not with a remand, it is a, you know, this court has an unprecedented proof of attorney misconduct and outright fraud that obviates jurisdiction and merits Rule 38 damages and Rule 38 sanctions and attorneys. That is the opportunity that we have here and going back for more years of litigation when we've already proven that these parties deliberately concealed all relevant information from discovery from two different courts, three, four different courts. You know, where's justice? If this can't, if this can't stop here, what message is that sending? Because there's no more ambiguity about what happened here. Going back to your argument that you left, you said there was a prior recorded LEND. I thought that LEND was released. Cannot be released, Your Honor. So, if you look at the purpose of the collateral transfer of note and LEND is putting the world on notice that you still have your deed of trust, you still have the, own the original note, which they did, you kept the original note, and you have the right to foreclose, so anyone that goes to buy that property, even if they're not a fraud, knows they can't buy that property unless they pay your LEND. That release, the collateral transfer of note and LEND, it's in the record, it's in your handout I was going to give you here. We can print what, bottom line, it specifically says, DNA Alvarez cannot file a release of LEND. Can't file a release of LEND. He can't release our LEND. You know this. You can't file a release of your bank's mortgage on your house. It's not effective. That's what they're trying to argue. So this is a prior recorded collateral transfer. It says, we own the deed of trust, the deed of trust is still valid, we can foreclose on it, and Alvarez can't release it. So, and Fugetti, even if he wasn't a fraud with actual knowledge of all this, it's public record. The recordation statutes make it extremely clear that Fugetti, whether he's a fraud or not, is on notice, constructive, irrebuttable, presumed notice of the existence of that collateral transfer of note and LEND, its contents, which means the LEND can't be released, and Steadfast still has its loan, and still owns the original note, and can foreclose if they're not paid. Your time has expired. Thank you, Your Honor. Mr. Patterson, Mr. Ramey said you were lying to us today. Yeah, I heard that. About your client paying off the loan. I'm sorry? About whether your client paid anything on the lien. Number one, I'm a little surprised, but I reviewed the closing documents, and if he has something else, I'd ask him to bring it to this court. If he wants to prove to this court that I lied, because I'm willing to prove everything that I've said in the record, he hasn't cited one thing out of the record of the trial court. He filed, as you know, hundreds if not thousands of pages with this court that are nowhere to be found in the trial record below. Nowhere. This court asked him, is that second tape before the district court, if I recall that question, suggesting that this court believes that the first tape is before the district court? It's not. None of this is. None of those things he filed is in the trial court below. He suggested that to you just now, and I would challenge this court to go back and look at everything he cites. That's why we were so careful to tell you where the things we're talking about is in the trial court record, because I don't want there to be any mistake, but I can assure the court I have not made a misrepresentation. The property was purchased at a title company pursuant to a contract for $275,000 cash and a $2.7 million note. That's what Trange hints. You heard him say, stand up in here and say... Are there verified checks in the record? Not in the record, because it wasn't challenged, right? This didn't come up until we were on appeal. It very easily could have. Everyone got a copy of the closing package. I have a copy of the closing package in my email. I wasn't there. I wasn't involved, but I got it, and it wasn't challenged. We come on appeal, and our police raise all of these outlandish issues knowing there's nothing in the record. There's nothing I can do. I mean, I could. He says there was a fraud claim in the district court, but that the district judge didn't get to it because he ruled on the legal issue. And this is how I address it. I mean, is that true? Was there a fraud claim pending in the district court? There was not a fraud claim pending, Your Honor. And if there was, right? Let's just walk through this. It makes logical sense, right? If you look in your book to tab 7, which is the court's final judgment, right? So, if there were fraud claims, you would have brought all this evidence, as he suggested, and put it before the court. What did the trial court do? All other relief not expressly granted in this judgment is denied. He denied it. And they appealed nothing. They appealed nothing. So, if, as he suggests, these things were there, and he tried, and he put it on, they were all denied. And they appealed to not one of those findings. No evidence of fraud at all? No. There were no fraud. The fraudulent transfer claim was denied in the 190th state unrelated litigation. It's in the final judgment. It says right there, fraudulent transfer denied. Right? It's not. That, I believe, is in the record. The 190th judgment is in the record where the fraudulent transfer claim is denied. But, so, he suggests this is an unprecedented opportunity. I would agree with that. Because he's asking for relief against parties that aren't even parties to this litigation. Right? And I guess he wants this court to issue summons, and bring these people in, and make these findings, and allow us to call witness. It doesn't make sense. Either he put the evidence, either these claims were pending below, and he put on this evidence, the district court denied them. And he didn't appeal. Or they weren't. And if they weren't, they'd have no place for this appeal. If they think they have these claims, go file them. Right? That's what we have courts for. That's what the process is for. And I'm okay with that. I mean, he tends to sue lawyers. Well, he sued me once. And so, I'm reluctant to say it, but that's why we have this system. Right? That's why we have the process. Go file your claims. But all this new stuff doesn't have anything to do with whether this deed Let's go back. Reminds me of one thing. Tab 1, the abstract. He talks about how they foreclosed. Remember, I provided this court with their abstract. Right? Look through the end. There is nothing on their abstract that shows a foreclosure sale. It's not there. He stands up and says it happened. He stands up and says, oh, it's uncontroverted. I mean, that's a favorite phrase. Right? Uncontroverted. Yeah? It's uncontroverted. It doesn't exist on their abstract. So, what we have and what we're asking this court to do is to focus on this district court opinion, which is, oh, and final thing before I finish up. Your time has expired. Thank you, Your Honor. Thank you, Counsel. Thank you.